## Angela D. Scott

### v.

## Greater Richmond Transit Company

Record No. 900836

March 1, 1991

Present: All the Justices

*William P. Hanson, Jr.,* for appellant.
*Beverly A. Burton, Assistant City Attorney,* for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this personal injury case, the primary issue is the admissibility of a document as a past recollection recorded.

On November 11, 1986, Angela Scott sustained personal injuries when the left rear corner of a bus owned by Greater Richmond Transit Company (bus company) struck the passenger door of Scott's two-door car. Scott's car was parked on the left side of a one-way street in the City of Richmond, and her sister, Iris Scott, was seated in the driver's seat. Scott contended that she was "*about* to enter [her] car [when the] bus come by, hit [her] car

door and knocked in the car door and swung back and knocked [her] in the car." (Emphasis added.)

The collision damaged the bus on its left side, 12 inches from the rear of the bus. The bus company contends that the location of the damage established that Scott *had entered* the car and that as the rear of the bus was passing Scott's car she pushed the car door out in order to pull in her umbrella and get enough leverage to close the door. The bus company argues that this movement caused the door to strike the left rear corner of the passing bus.

At a jury trial on March 29, 1990, a bus company investigator, Grant Baskerville, testified that he remembered writing out a statement from a passenger in the car on the day of the accident, but that he had no recollection of what the passenger had told him regarding the details of the accident. The court admitted the following statement as a past recollection recorded:

### Statement of other Driver/Passengers

Ms. *Iris* Scott stated that she was entering the parked car on right side, she had seated [sic] and was closing the door when it was struck by a passing bus. [S]he saw the bus before entering the car, was trying to get her umbrella in the door.

(Emphasis added.) Baskerville had circled the word "Passengers" on the above document, but apparently mistakenly attributed the statement to Iris Scott, the plaintiff's sister who was in the driver's seat, rather than to the plaintiff Angela Scott.

The jury returned a verdict for the bus company, and the trial court entered judgment on the jury's verdict. Scott appeals.

Scott contends that the trial court erred in admitting the statement because of the provisions of Code § 8.01-404.

As pertinent, Code § 8.01-404 provides:

A witness may be cross-examined as to previous statements *made by him in writing or reduced into writing*, relative to the subject matter of the civil action, without such writing being shown to him; but if it is intended to contradict such witness by the writing, his attention must, before such contradictory proof can be given, be called to the particular occasion on which the writing is supposed to have been made, and he may be asked if he did not make a writing of the

purport of the one to be offered to contradict him . . . . *This section is subject to the qualification*, that in an action to recover for a personal injury or death by wrongful act or neglect, *no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness and no extrajudicial recording of the voice of such witness, or reproduction or transcript thereof*, as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case.

(Emphasis added.)

The exclusionary sentence embodying the qualification was added in 1919. Code § 6216 (1919). We have said that

> [t]he purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signed by persons who had not fully recovered from shock and hence were not in full possession of their faculties. Later, such persons, when testifying as witnesses, would be confronted with their signed statements and, after admitting their signatures, these statements would be introduced in evidence as impeachment of their testimony given on the witness stand.

*Harris* v. *Harrington*, 180 Va. 210, 220, 22 S.E.2d 13, 17 (1942); *see also Alspaugh* v. *Diggs*, 195 Va. 1, 77 S.E.2d 362 (1953); *Liberty Mut. Ins. Co.* v. *Venable*, 194 Va. 357, 73 S.E.2d 366 (1952); *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S.E.2d 352 (1943).

Scott contends that the exclusionary sentence of Code § 8.01-404 prohibits the bus company's use of the Baskerville document to contradict Scott, whether in her cross-examination or by its use as part of the bus company's case in chief. We disagree.

In every case except one in which we applied the exclusionary sentence of Code § 8.01-404, the written document was either signed by the witness or in the handwriting of the witness. *Ketchmark* v. *Lindauer*, 198 Va. 42, 92 S.E.2d 286 (1956); *Alspaugh* v. *Diggs*, 195 Va. 1, 77 S.E.2d 362 (1953); *Liberty Mut. Ins. Co.* v. *Venable*, 194 Va. 357, 73 S.E.2d 366 (1952); *Solterer* v. *Kiss*, 193 Va. 695, 70 S.E.2d 329 (1952); *Robertson* v. *Com-*

*monwealth*, 181 Va. 520, 25 S.E.2d 352 (1943); *Saunders* v. *Hall*, 176 Va. 526, 11 S.E.2d 592 (1940); *Worrell* v. *Worrell*, 174 Va. 11, 4 S.E.2d 343 (1939); *Virginia Elec. & Power Co.* v. *Mitchell*, 159 Va. 855, 164 S.E. 800 (1932); *Washington & Old Dominion Ry.* v. *Weakley*, 140 Va. 796, 125 S.E. 672 (1924). The exception is *Lee* v. *Artis*, 205 Va. 343, 136 S.E.2d 868 (1964), in which a plaintiff's contradictory statement was contained in a police officer's written summary of what the plaintiff had told him about the accident. *Id.* at 345, 136 S.E.2d at 870. The evidence was held inadmissible for a number of reasons, including that the exclusionary sentence of the predecessor of Code § 8.01-404 also applied. To the extent that *Lee*'s application of the predecessor to Code § 8.01-404 is inconsistent with this ruling, it is overruled.

■ Even so, Scott argues that her statement was not admissible as a past recollection recorded. Citing McCormick on Evidence §§ 299, 302 (E. Cleary 2d ed. 1972), we applied this exception to the hearsay rule in *Ashley* v. *Commonwealth*, 220 Va. 705, 708, 261 S.E.2d 323, 325 (1980). McCormick's current treatise lists the following requirements for use of this hearsay exception:

(1) [T]he witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.

McCormick on Evidence § 299 (E. Cleary 3d ed. 1984).

■ Scott contends that Baskerville's evidence fails the first requirement because Baskerville had firsthand knowledge, not of the collision, but only of Scott's statement. Here, however, the event we are concerned with is Baskerville's firsthand knowledge of Scott's statement, not his knowledge of the collision itself.*

■ Further, Scott argues that Baskerville's evidence fails the fourth requirement because of his obvious error in noting that the statement was made by *Iris* Scott, the person seated in the driver's seat, and not Angela Scott, the plaintiff. Scott did not claim that

---

* The memorandum recites the passenger's oral statement on the day of the accident. The oral statement is hearsay, but if Angela Scott made the statement, it is itself admissible under the party admission exception to the hearsay rule.

Baskerville had inaccurately recorded her statement. Baskerville, however, testified that he had taken the statement of the passenger in the Scott car, *not* its driver. Indeed, the content of the statement itself showed that it must have been made by Angela Scott, who was a passenger in the car. Baskerville's confusion in the names of the two sisters was simply a matter for the jury to consider in weighing Baskerville's testimony.

■ Accordingly, we conclude that the trial court correctly permitted Baskerville to read the statement to the jury. However, for the reasons that follow, we are of opinion that the statement should not have been made an exhibit.

We have not explicitly decided whether a record of a past recollection can be introduced as an exhibit. There is disagreement among other jurisdictions whether the document is admissible as an exhibit, or excluded and merely read aloud by the witness as his past recollection recorded. *See* 3 J. Wigmore, Evidence § 754 (Chadbourn rev. ed. 1970); *see also* Blakely, Past Recollection Recorded: Restrictions on Use as Exhibit and Proposals for Change, 17 Hous. L. Rev. 411 (1980).

■ When a witness reads a record of past recollection to a jury, he merely is telling the jury what he knew and recorded at a prior time, but has since forgotten. *See* Blakely, *supra*, at 483. A past recollection recorded is comparable to a deposition that is read into evidence, but may not be introduced as an exhibit, so as to receive "no more emphasis than other oral testimony." *Horne* v. *Milgrim*, 226 Va. 133, 138, 306 S.E.2d 893, 895 (1983). But if a past recollection recorded is made an exhibit, it could be taken to the jury room. Code § 8.01-381.

■ We prefer the view adopted by a significant number of states and hold, as expressed in the Federal Rules of Evidence, that "the [past recollection recorded] may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Fed. R. Evid. 803(5). We do not, however, reverse the case on this ground because Scott never contended in the trial court that a past recollection recorded should not be introduced as an exhibit. Rule 5:25.

Finally, Scott argues that the trial court erred in refusing to grant the following instructions:

Instruction No. 6: It is the duty of the driver of a motor vehicle going past a parked car to pass at least two feet to the right of that vehicle.

Instruction No. 7: The driver of a vehicle passing another vehicle proceeding in the same direction has a duty to pass at least two feet to the right of that vehicle and not to return again to the left side of the highway until [he] can do so safely.

If a driver fails to perform this duty, then [he] is negligent.

 Scott bases her contention upon the following provision of Code § 46.2-838: "[t]he driver of any vehicle *overtaking* another vehicle *proceeding* in the same direction shall pass at least two feet to the left of the *overtaken* vehicle. . . ." (Emphasis added.) Scott recognizes that the statute requires that the other vehicle be "proceeding," but argues that her vehicle meets the statutory requirement for the reasons articulated in *Dey* v. *Virginia Transit Co.*, 187 Va. 635, 639, 47 S.E.2d 552, 554 (1948).

In *Dey*, a bus had stopped temporarily to take on passengers when the defendant's car passed it and cut in front of the bus as it was starting up again. *Id.* at 636-37, 47 S.E.2d at 552. The bus driver slammed on the brakes to avoid striking the car, and a boarding passenger was thrown to the floor and injured. *Id.* at 637, 47 S.E.2d at 552. We applied the predecessor statute to Code § 46.2-838 because "[a] bus operating on the streets of a city, which temporarily stops at street intersections to take on or discharge passengers, is obviously a 'vehicle proceeding in the same direction.'" *Id.* at 639, 47 S.E.2d at 554.

Here, however, Scott's vehicle was not "temporarily stop[ped]," but was parked. For that reason, the trial court correctly refused the instructions.

Finding no reversible error, we will affirm the judgment of the trial court.

*Affirmed.*