# CIRCUIT COURT OF SURRY COUNTY

Mindy B. Insley

    v.

Patrick C. Walsh

October 11, 2012

Case No. CL11-000053-00

BY JUDGE W. ALLAN SHARRETT

This matter comes before the Court on the Defendant's Pre-Trial Brief. The issue before the Court is does the Defendant's calling an insurance company claims representative to testify as a witness about a conversation with the Plaintiff regarding the motorcycle accident at issue violate Virginia Code § 8.01-404? Additionally, may Plaintiff call a State Farm Insurance agent to testify on the issue of liability of the Defendant for Plaintiff's claimed injuries in tandem with Plaintiff's mother's testimony about the agent's statements to her about the Defendant's liability and coverage?

*Facts*

This lawsuit concerns a motorcycle accident that occurred on the evening of June 14, 2009, in Surry County. The Plaintiff, Mindy Insley, was the passenger on the Defendant's motorcycle when a deer jumped in front of the bike causing the motorcycle to strike and kill the deer. Both Plaintiff and Defendant were thrown from the bike, and the Plaintiff suffered injuries treated at Riverside Hospital.

The Plaintiff, her sister, and her friend were at the Texas Roadhouse restaurant in Newport News on the evening of the accident when Ms. Insley's friend requested that the Defendant and his friends give the women a ride on their motorcycles. Arrangements were made for the women to meet up with the Defendant and his friends for a motorcycle ride later that evening, so that the women could change into appropriate riding clothing and the men could secure additional helmets. The group later met up at the McDonald's in Poquoson.

During the motorcycle ride, the Plaintiff's sister requested that the Defendant do "wheelies" with her on the bike. The Defendant refused, and so the Plaintiff switched bikes with her sister and ended up riding with the Defendant, Patrick "Connor" Walsh. The sister was riding with Mr. Dycus, and the friend was riding with Mr. Dail. The group rode down Mercury Boulevard toward the James River Bridge going faster than the posted speed limit.

After the ride led the group into Surry County, the testimony from the Defendant and Mr. Dail, and the anticipated testimony of Mr. Dycus, is that they were traveling around the posted speed limit of 55 miles per hour. The women will testify that the Defendant and his friends were speeding in excess of 85 miles per hour in a 55 mile per hour zone. The Plaintiff will testify that although she could not see the motorcycle's speedometer at the time of the accident, she believes that the Defendant's speed was not less than 90 miles per hour.

A few days after the accident, Plaintiff's mother, Gloria Insley, contacted State Farm agent Tray Hardaway about the Defendant's liability coverage. Mrs. Insley wishes to testify that Mr. Hardaway explained that the Defendant had $100,000 in coverage and that she did not need to worry about anything.

Later, on June 23, 2009, the Plaintiff had a telephone conversation about the accident and her injuries with Marlon Vick, a State Farm agent. She told the agent that she did not recall how fast the Defendant was driving but that he was driving "normal speed" before the crash. She also relayed that there was nothing the Defendant could have done to prevent the accident once the deer jumped in front of the motorcycle. The allegations contained in the claim and her deposition testimony contradict this conversation.

## Discussion

Plaintiff's objection to the testimony of the claims representative to whom the contradictory statements were made is based on Virginia Code § 8.01-404. The section states, in relevant part:

> This section is subject to the qualification that, in an action
> to recover for a personal injury or death by wrongful act or

neglect, no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness and no extrajudicial recording made at any time other than simultaneously with the wrongful act or negligence at issue of the voice of such witness, or reproduction or transcript thereof, as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case.

Va. Code Ann. § 8.01-404 (2012).

Based on this statute, the Defendant may call Mr. Vick, an insurance company claims representative for State Farm, to testify about a conversation with the Plaintiff regarding the motorcycle accident at issue, but may not introduce the transcript into evidence. Plaintiff concedes that there is case law that suggests that the insurance adjuster may testify with respect to an inconsistent statement that was made by the Plaintiff. However, a copy of the document itself is not admissible.

In *Harris v. Harrington*, 180 Va. 210, 22 S.E.2d 13 (1942), the Supreme Court of Virginia held that the trial court erred in refusing to admit into evidence impeachment testimony of an adverse witness. *Id.* at 221, 22 S.E.2d at 18. The witness in the *Harris* case was a passenger in the defendant's car and had testified that she had been asleep at the time of the car accident and did not know the speed of either vehicle. *Id.* at 218, 22 S.E.2d at 16. The defendant's attorney had interviewed the witness in the hospital shortly after the accident and took a signed written statement stating estimates for the speed of both vehicles. *Id.* at 218, 22 S.E.2d at 16. The witness admitted to being interviewed but denied that the account of the accident was based on her own knowledge. *Id.* at 219, 22 S.E.2d at 17. The court ruled that the previous statute found in Va. Code § 6216 did not prohibit impeachment of a witness by oral testimony of prior inconsistent statements when such statements were reduced in a writing signed by the witness. *Id.* at 221, 22 S.E.2d at 18. Thus, the attorney who interviewed the witness should have been allowed to impeach the witness orally while making no reference to the written statement.

The court stated that the statute excluded testimony that contradicted the witness by the introduction of a prior inconsistent statement in writing, but not by oral testimony. *Id.* at 220, 22 S.E.2d at 17. The purpose behind the statute was to prevent claim adjusters from rushing to the accident scene and obtaining written statements from shocked witnesses, which would later be used to impeach their testimony. *Id.* at 220, 22 S.E.2d at 17. Further, "[t]he statute was intended to correct these abuses, and, to this extent, it is a modification of the rule as to best evidence, but it was never intended to prohibit the proof of prior inconsistent statements by oral testimony." *Id.* at 220, 22 S.E.2d at 17. This sentiment is reiterated in other Virginia case

law. *See Scott v. Greater Richmond Transit Co.*, 241 Va. 300, 402 S.E.2d 214 (1991) (held the trial court correctly permitted an investigator to read a written statement prepared after speaking with the victims of the accident as a past recollection recorded but it should not be entered as an exhibit).

Ms. Insley told the claims adjuster over the telephone that the motorcycles were traveling at "normal speeds." This conversation was recorded and transcribed, but never signed by Ms. Insley as a written statement. Her admissions over the phone to State Farm were later contradicted in her complaint and deposition testimony when she alleged that the Defendant was driving at excessive speed. Pursuant to *Harris*, Ms. Insley may be impeached on her prior inconsistent statement at trial by the claims adjuster during oral questioning, but not by introduction of the transcript into evidence. If her previous statements are offered for impeachment, Ms. Insley "is entitled, upon request, to have the trial court give a cautionary instruction to the jury advising that the statement is to be considered only insofar as it affects the witness' credibility and that it cannot be considered as proof of the statement's content." *Gray v. Rhoads*, 268 Va. 81, 89, 597 S.E.2d 93, 98 (2004).

The transcript may also be used to refresh her recollection of the accident. The plain terms of Virginia Code § 8.01-404 limits the application of the prohibition to situations where a prior written statement is used to "contradict" a witness. *Ruhlin v. Samaan*, 282 Va. 371, 379, 718 S.E.2d 447, 451 (2011). In *Ruhlin*, the court stated that the act of refreshing a witness's recollection is not a situation that contradicts prior testimony. Thus, the Defendant could use the transcript for the purpose of refreshing Ms. Insley's memory, but could not introduce the transcript into evidence.

Ms. Insley's statements are also a party admission against interest. In *Gray*, the defendant police officers had made statements during an audio-recorded interview that were later transcribed. *Id.* at 85, 597 S.E.2d at 96. The plaintiff sought to introduce the transcripts of the officers' statements as party admissions in the plaintiff's case-in-chief. *Id.* at 89, 597 S.E.2d at 98. Because, at that point in the trial, the officers would not have been testifying as witnesses, nor would they have previously testified, this use was not "contradictory" within § 8.01-404. Thus, these "extra-judicial admissions made by a party to a civil action are admissible in evidence" against that party. *Id.* at 89, 597 S.E.2d at 98.

The Plaintiff requests to explore any bias that a witness such as Mr. Vick may have, and the Plaintiff has a right to do so. There is a "well settled rule that a litigant has a right to establish facts and circumstances tending to show the interest, bias, or prejudice of a hostile witness." *Highway Express Lines v. Fleming*, 185 Va. 666, 672, 40 S.E.2d 294, 298 (1946). In *Fleming*, the agent for the defendant's insurance carrier testified about written statements he took from various witnesses to the accident, and the nature of his employment was admissible and relevant for the limited purpose for

which it was admitted. *Id.* at 671, 40 S.E.2d at 297. Of course, evidence as to whether Mr. Walsh does or does not have insurance is irrelevant and inadmissible because it violates the collateral source rule. *Id.* at 672, 40 S.E.2d at 297. *See also Lombard v. Rohrbaugh,* 262 Va. 484, 493, 551 S.E.2d 349, 353 (2001). Thus, cross-examination of Mr. Vick to draw out his bias is admissible.

The Plaintiff may not call a State Farm insurance agent, Tray Hardaway, to testify on the issue of liability of the Defendant, nor may Plaintiff's mother, Gloria Insley, testify about the telephone conversation she had with Tray Hardaway about the Defendant's liability and insurance coverage. The testimony has little probative value and injects insurance into the case. Generally, "any comment deliberately made to inform the jury that a defendant is insured against an accident constitutes reversible error." *Lombard,* 262 Va. at 492, 551 S.E.2d at 353. These comments are misleading and could prejudice the Defendant because the jury is aware of the insurance coverage and would think that the insurance carrier, rather than the Defendant, is responsible for paying any damages awarded. *Id.* at 492, 551 S.E.2d at 353. The proposed testimony concerns Mr. Hardaway's informing Mrs. Insley about Mr. Walsh's insurance coverage, which is not the proper scope of testimony. Additionally, the mother may not testify about what Mr. Hardaway told her, because the testimony is inadmissible and is also hearsay for which no exception applies.

*Conclusion*

For the reasons herein, Virginia Code § 8.01-404 does not preclude the Defendant from calling Mr. Vick, an insurance company claims representative for State Farm, to testify about a conversation with Ms. Insley regarding the motorcycle accident at issue, though the Defendant may not introduce a transcript of the conversation into evidence. The Defendant may use the transcript to refresh the Plaintiff's memory, however, and the Plaintiff may cross-examine Mr. Vick about any bias he may have. The statement may be admissible against Ms. Insley as a party admission if it is not used to "contradict" her within the meaning of the statute. Finally, the Plaintiff may not call Mr. Hardaway or Mrs. Insley to testify about the telephone conversation pertaining to the Defendant's liability insurance coverage.